## SAN ANTONIO & A. P. RY. CO. v. MASON. (No. 7658.)

(Court of Civil Appeals of Texas. San Antonio. Dec. 22, 1926. Rehearing Denied Jan. 19, 1927.)

1. **Appeal and error ⬉999(3)—On all issues being submitted to jury and found in plaintiff's favor, judgment should be affirmed, in absence of errors at law.**

Where court submitted to jury every issue of negligence and liability in action for injuries, and jury answered by finding every fact against defendant, judgment for plaintiff should be affirmed, in absence of errors of law.

2. **Master and servant ⬉286(3)—Safety of working place of railroad's porter, injured by truck slipping into drain, held for jury.**

In action by porter in railway depot for loss of finger, occasioned by truck's slipping into drain while plaintiff was unloading baggage from car, issue as to whether place of work furnished was safe held for jury.

3. **Master and servant ⬉289(15)—Contributory negligence of porter, caught between baggage car and truck slipping into drain while unloading car, held for jury; "contributory negligence."**

In action by baggage porter against railroad for loss of finger, occasioned by truck's slipping into drain while porter was unloading trunks from baggage car, porter who had placed truck at or near ditch many times before held not guilty of contributory negligence, as matter of law; contributory negligence being act or omission amounting to want of ordinary care, which, concurring with negligent act of defendant, is proximate cause of injuries.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Contributory Negligence.]

4. **Master and servant ⬉235(7) — Servant owes no duty to inspect place of work.**

Servant owes no duty of inspection of place of work, but assumes risks of danger of which he has actual knowledge.

5. **Master and servant ⬉101, 102(9)—Railway was bound to furnish safe place for porter unloading baggage from cars.**

Railway company, hiring baggage porter to unload trunks from baggage cars on truck in depot grounds, was bound to furnish porter safe place to work.

6. **Master and servant ⬉77—Master's breach of contract to furnish medical treatment to injured employee must be treated as breach of ordinary contract.**

Contract by railway to furnish baggage porter medicine and medical treatment, in case of injury, must, on breach, be treated as ordinary contract.

7. **Master and servant ⬉77—Railway, failing to furnish medical treatment to injured employee, held liable for damages.**

Railway which agreed to furnish medical treatment to employee, in case of injury, in consideration of $.50 a month deducted from monthly salary, held liable for damages to porter injured in unloading trunks, where medical services were not furnished, and as result porter was obliged to have finger amputated.

8. **Damages ⬉132(13) — $5,000 to baggage porter for loss of third finger on left hand, pain and suffering, and diminished earning capacity held not excessive.**

In action by baggage porter against railroad, verdict for $5,000 for amputation of third finger on left hand, pain and suffering, and diminution of earning capacity as manual laborer held not excessive.

Appeal from District Court, Nueces County; W. B. Hopkins, Judge.

Action by Simon P. Mason against the San Antonio & Aransas Pass Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, and Kleberg & North and M. G. Eckhardt, Jr., all of Corpus Christi, for appellant. J. C. Scott, of Corpus Christi, for appellee.

COBBS, J. Appellee sued appellant to recover damages for personal injuries inflicted upon his person, which caused the amputation of appellee's third finger, physical pain and suffering, and diminished his earning capacity as a manual laborer by reason of negligence attributable to appellant in not providing appellee with a safe place to work, or in not supplying appellee with prompt medical attention.

Appellant's answer contained ten paragraphs of general demurrers, special exceptions, and answers. The answer contained general denial, special answer setting up the statute of limitations in respect to the right of appellee to recover anything by reason of the alleged breach of the contract to furnish medical attention, and special answer setting up contributory negligence of appellee in

treatment of the finger after its injury was caused by the negligence of appellee.

A special answer setting up the necessity of the water drain, for drainage purposes, which, it was alleged, was the proximate cause of the injury, and that appellee was negligent in placing and loading the trunks on the truck so near the drain as to cause the truck to roll in the drain at the place appellee was loading trunks from the cars while standing over the drain, that appellee knew where said drain was located, and that his contributory negligence was the proximate cause of the injury.

The case was submitted to a jury on special issues, and, upon the return of their verdict assessing the damages against appellant for $5,000, judgment was accordingly entered against defendant for said sum.

Briefly, to understand this case, appellee was a porter working at appellant's depot in Corpus Christi. Among his duties, he was required to load and unload baggage in and from appellant's baggage cars at its depot. For the purpose of draining water from the depot grounds, appellant had caused a small drainage ditch to be dug. The ditch and its location are not well defined in the briefs of the parties, but we assume from the testimony it was very close to the track, and, in order to drive the truck close enough to the car for the purpose of unloading, the porter would have his truck close to the car and perhaps the wheels would be standing close to the drain and perhaps over. The allegation of the petition. is:

"On or about May 29, 1921, plaintiff, in the discharge of his duties as an employee of defendant, was engaged at its passenger station in Corpus Christi, in the removal of baggage, consisting of trunks, from the passenger car into defendant's baggage and trunk room, across its railroad tracks, from said car; and in so doing he was using a truck supplied him for such purpose by the defendant; and in order to place such baggage onto said truck, he placed the truck near the door of, the baggage car, and while he was placing a trunk in proper position thereon, and was using due care and caution in so doing, the wheels under one end of the truck rolled down into a water drain that defendant had carelessly and negligently made in the surface of the ground, and which passed under the truck on which the track on which the baggage car was standing, and thereby the truck was caused to move forward, parallel with the car, and plaintiff's hand was caught between the trunk that plaintiff was placing on the truck and one side of the facing of the door of the car, and thereby mashed plaintiff's left hand and the third little finger thereof, thereby seriously injuring plaintiff's left hand and said fingers of same."

It was alleged that the appellant did not furnish appellee a safe place to work in removing the baggage from the cars to the depot. It was also alleged that he had a verbal contract with appellant, in consideration that he paid 50 cents monthly (which he paid), it was agreed, and appellant obligated itself, to supply plaintiff with prompt and efficient medical attention whenever required. Defendant refused to furnish this service, and appellee was required to furnish and pay for it himself.

The cause was submitted to the jury on special issues and the jury found, first, that the appellant did not furnish a safe place to work; second, that the failure so to do was the proximate cause of the injury; third, that it did not supply the plaintiff with prompt and efficient medical attention and treatment for the injuries sustained by him in removing the baggage from the baggage car; fourth, the jury found the failure of appellant to furnish prompt and efficient attention and treatment for the injuries sustained by him was the proximate cause of the amputation of the third finger on the left hand and the injury done; fifth, that $5,000 would be adequate compensation for all injuries suffered by appellee; sixth, that he did not assume the ordinary risk incident thereto; seventh, that he was not guilty of contributory negligence which contributed to or was the proximate cause of his injury in the manner of placing the truck at the car for the purpose of unloading the baggage therefrom; eighth, that appellee exercised and used such caution to take care of and treat his finger as a person of ordinary prudence and caution would have used, under the same circumstances, after the alleged injury to same on May 29, 1921.

From the foregoing it will be seen that the court submitted to the jury every question of negligence and liability that could possibly arise in the case, and the jury has answered by finding every fact against appellant.

[1] Such being the state of this record, unless some error of law has been committed by the trial court, the judgment should be affirmed. The evidence supports the findings of the jury.

[2] Under appellant's first proposition, it is conceded that it was incumbent upon it to furnish a safe place to work. It is not for us to say, as a matter of law, that the place furnished was safe or not; that was for the jury to ascertain. It cannot be said that building a drain on the ground to carry off water from the premises along the track of the railroad where the car stops to let off baggage was, as a physical fact, dangerous itself, but it may become so in its use. There was no underground drainage or pipes, or covering over the ditch to prevent the wheels of a loaded truck from sliding in while appellee was at work. Clearly, the trunks were not unloaded upon any platform, but out of the car onto trucks standing on the ground beside the track. The drain has been filled since the injury. The drain was a depression made to drain water between all the tracks and carry it out in the

street, or at any rate of sufficient size to drain water out. It was a ditch dug across these tracks going out into the low land, about 4 or 6 inches deep, about 2 or 3 feet wide. There was no platform where he was unloading baggage. The car was on the third track from what they call the platform. The jury found that the place was unsafe for the purpose of unloading trunks upon trucks, and, as they were on the ground and hearing and seeing the witnesses testify, we shall not interfere with that finding.

[3] It is true the drainage ditch had been there quite a while, and had been worn in. While not, perhaps, inherently dangerous, yet the wheel of the truck slipped in the ditch as the porter was loading, causing his hand to be jammed in the door held between it and the truck or trunk on the truck, so that he was injured. It cannot be said that appellee can be charged with any contributory negligence. The master furnished, as was its duty, the place and the truck, and, while appellee knew of the ditch, in doing his work, the jury found he was not guilty of the want of the exercise of ordinary care. If the ditch had not been there, the injury would not have occurred, and, conversely, if the ground had been level or the ditch covered, the injury could not have occurred.

[4] The servant owes no duty of inspection, but assumes the risks of a danger of which he has actual knowledge. Can it be said he knew that it was dangerous to place his truck at or near this ditch that had been there so long, and where he had loaded his truck many times? When he placed the trunk on the truck, the truck ran down in the drain. About which, appellee testified as follows:

"When the truck moved down, it caught my left hand. My left hand got caught between the corner of the trunk and the door facing of the car. I had my hand on the corner of the trunk, just like anybody would catch a hold of the corner of anything, with the palm of your hand in that position (illustrating) and it only happened that this ring finger between was resting right on the corner of the trunk when I got the mash. The truck stopped when the trunk struck that door facing on the north side. My hand was caught in there. It hurt my hand. It hurt all three of the fingers, straight from this joint to the center of this joint, and down in the corner of the little finger, just caught my hand and pinched my hand. It struck on straight across these three fingers, in that position (illustrating). It mashed this one in this joint, caught it in the joint there, and got the little finger in this one, just struck right down like that, by holding my hand in that position (illustrating). I was ahold of the corner of the trunk and as I was working, why, this truck, by being a water drain there, moved forward that way, and mashed my hand against the side of the car (illustrating to the jury). It caught my little finger on my left hand, it caught the next finger to that. It caught the third finger, but it only damaged the two, because it was too near the end for it to do much damage, but it caught the tip of that finger. It caught this finger and this finger (indicating). It caught the little finger and the ring finger—the third finger. I think you call it the ring finger—the one that's gone. My hand was fastened in between the door facing and the trunk. I worked the trunk away and got my hand out."

The jury found that appellee was not guilty of any act of contributory negligence, as defined by this court in San Antonio Brewing Co. v. Wolfshohl, 155 S. W. 644. It is there held:

"Contributory negligence is such an act or omission of the plaintiff [the servant], amounting to a want of ordinary care and prudence, as concurring or co-operating with the negligent act of the defendant is the proximate cause of the injuries of which complaint is made."

[5] There was nothing to indicate to appellee that such a condition would happen or occur to him in performing such services, but it was the duty of appellant to furnish a safe place for him to do the work; and this place was rendered unsafe for that purpose by the act of appellant in digging the drainage ditch and leaving it uncovered at the place where it was appellee's duty to unload the car.

[6] Discussing and passing upon appellant's fourth proposition upon the charge that appellant breached its contract in respect to furnishing medicine and medical treatment, we know of no other way to treat this question than as the breach of any other agreement between man and man.

[7] For such service, which was mutually beneficial, the appellant required appellee, as well as other employees, to contribute 50 cents per month, to pay for the expenses of medical attention when needed, which 50 cents was deducted from the monthly salary of this employee as well as all others similarly situated. Hence we find a valid consideration paid for such services. The proof shows that appellant did not furnish the medical services, and breached its contract therefore, and is liable in damages.

If the services had been promptly furnished, no doubt, the suffering and pain would have been ameliorated and appellee might not have suffered the loss of his finger. He called on appellant and on Dr. Heaney, the company's surgeon, but, getting no attention or service from him, he was compelled to and did secure, at his own expense, another surgeon. He secured the services of Dr. Watson, who thereafter treated him. Blood poison set in, and the doctor was compelled to amputate his finger and thereby saved his hand, and perhaps his life.

On account of the injuries inflicted and lack of medical attention, the appellee suffered great physical pain and sickness for a long time. In order to avoid a fatal illness, his little finger had to be amputated and rendered useless.

[8] Appellee is a laboring man, earning his living by the "sweat of his brow," and his earning capacity has been greatly diminished by reason of appellant's negligent acts. He was not furnished a safe place to do his work and not promptly supplied with medical attention. The jury placed his damages at $5,000, and we do not think appellant has shown any error that should cause the reduction thereof.

Finding no error assigned that should cause a reversal, the judgment is affirmed.